**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**WENDY MCWILLIAMS,** *individually and*                                           **PLAINTIFF**
*on behalf of others similarly situated*

**V.**                                                        **CAUSE NO. 3:15-CV-70-CWR-LRA**

**ADVANCED RECOVERY SYSTEMS,**                                    **DEFENDANTS**
**INC.; YOUNG WELLS WILLIAMS, P.A.**

<u>**ORDER**</u>

Before the Court are Advanced Recovery Systems' motion for summary judgment,

Young Wells Williams' motion for partial summary judgment, and Wendy McWilliams' motion

for partial summary judgment. The motions are fully briefed and ready for adjudication.

**I.      Factual and Procedural History**

In this class action, Wendy McWilliams claims Advanced Recovery Systems (ARS) and

Young Wells Williams (YWW) violated the Fair Debt Collection Practices Act (FDCPA). 15

U.S.C. §§ 1692 *et seq.*

On August 27, 2014, YWW sent McWilliams a debt collection letter. The relevant text

read as follows:

> Your account with ADVANCED RECOVERY SYSTEMS, INC., has been turned
> over to this office for collection. The amount you owe is $2,166.80.
>
> **UNLESS YOU DISPUTE THE VALIDITY OF THE DEBT WITHIN**
> **THIRTY (30) DAYS FROM THE RECEIPT OF THIS NOTICE, THE**
> **DEBT WILL BE PRESUMED TO BE VALID.**
>
> **IF YOU NOTIFY US WITHIN THIRTY (30) DAYS THAT THE DEBT OR**
> **ANY PORTION OF IT IS DISPUTED, WE WILL MAIL VERIFICATION**
> **OF THE DEBT TO YOU.**
>
> **ALSO, UPON YOUR REQUEST WE WILL PROVIDE YOU THE NAME**
> **AND ADDRESS OF THE ORIGINAL CREDITOR, IF THE ORIGINAL**
> **CREDITOR IS DIFFERENT FROM THE CURRENT ONE.**

**THIS LETTER IS FROM A DEBT COLLECTOR. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

You MUST send your payment to me at the address below to avoid the possibility of being sued. **To discuss payment arrangements please call 601-948-6100.**

If there are any questions, please contact me at the number below.

The 30-day period in the letter "is commonly called the 'validation period,' and the aforementioned notice is routinely referred to as the 'validation notice.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 412 (7th Cir. 2005).

In Count I, McWilliams alleges that three sentences in the letter incorrectly communicated the FDCPA's required validation notice. "Specifically," the letter erred "(a) by stating that a failure to dispute the debt would result in a presumption that the debt is valid not just by the debt collector, (b) by failing to inform Plaintiff that Defendants need only mail verification of the debt to her if she notifies Defendants of her request in writing, and (c) by failing to inform Plaintiff that Defendants need only identify the name and address of the original creditor if Plaintiff notifies Defendants of her request in writing."

In Count II, McWilliams claims that the threat of litigation – "You MUST send your payment to me . . . to avoid the possibility of being sued" – overshadowed and rendered ineffective the validation notice. "In other words," she says, "disputing the debt would be futile because Young Wells intended to file suit unless Plaintiff made prompt payment."

It is for Court III that additional facts must be recited.

As of the August 27 letter, YWW and ARS thought McWilliams owed $1,640 to St. Dominic's Hospital and $526.80 to Physicians Anesthesia.

On September 2, YWW emailed ARS to seek confirmation of these balances. Apparently, a YWW employee had spoken with McWilliams, who claimed that she had been

2

paying on some portion of the debt and had also been approved by St. Dominic's for financial

assistance. The next day, ARS confirmed to YWW that the full $2,166.80 was owed.

On September 8, St. Dominic's waived, in writing, its share of the debt.

On September 25, McWilliams faxed the St. Dominic's waiver letter to ARS and YWW.

That day, YWW emailed a copy to ARS and asked, "Do you still want to file a complaint?"

On October 7, ARS responded, "PLEASE SHUT THIS FILE DOWN..DEBTR [sic]

WAS GIVEN CHARITY."

On October 17, however, YWW sued McWilliams for the full amount, $2,166.80, in the

state courts of Mississippi.

The summons YWW enclosed with that lawsuit contained the customary court heading

and case caption, after which came this text:

> THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS
> IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT
> YOUR RIGHTS.
>
> **UNLESS YOU DISPUTE THE VALIDITY OF THE DEBT WITHIN
> THIRTY (30) DAYS FROM THE RECEIPT OF THIS NOTICE, THE
> DEBT WILL BE PRESUMED TO BE VALID, IF YOU NOTIFY US
> WITHIN THIRTY (30) DAYS THAT THE DEBT OR ANY PORTION OF
> IT IS DISPUTED, WE WILL MAIL VERIFICATION OF THE DEBT TO
> YOU. ALSO, UPON YOUR REQUEST WE WILL PROVIDE YOU THE
> NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF THE
> ORIGINAL CREDITOR IS DIFFERENT FROM THE CURRENT ONE.**
>
> You are required to mail a copy of a written response to the Complaint to . . .
> Young Wells Williams P.A. and whose address is . . . . Your response must be
> mailed within thirty (30) days from the date of delivery of this summons and
> complaint or a judgment by default will be entered against you for the money or
> other things demanded in the Complaint.
>
> You must also file the original of your response with the Clerk of this Court
> within a reasonable time afterward. . . .

Although YWW dismissed the debt collection suit on December 3, the summons is the basis for Count III of this litigation. In Count III, McWilliams contends that the summons violated § 1692e(10) of the FDCPA because it falsely stated that she owed a debt, that she still had the right to dispute the debt's validity, and that her failure to contest the validity within 30 days would result in it being presumed valid by the court.

YWW moved to dismiss Counts II and III. The undersigned found that Count II failed to state a claim but held that Count III could proceed. *McWilliams v. Advanced Recovery Sys., Inc.*, 108 F. Supp. 3d 456 (S.D. Miss. 2015).

Additional discovery was completed and these motions followed. Meanwhile, McWilliams' unopposed motion for class certification was granted. *McWilliams v. Advanced Recovery Sys., Inc.*, 310 F.R.D. 337 (S.D. Miss. 2015).

## II.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would

4

prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III.   Discussion

"The purpose of the [FDCPA] is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 668 (5th Cir. 2012) (quoting 15 U.S.C. § 1692(e)). The statute requires debt collectors to provide the following information to consumers within five days of the debt collector's initial communication:

> (1) "the amount of the debt";
> (2) "the name of the creditor to whom the debt is owed";
> (3) a statement that unless the consumer "disputes the validity of the debt" within 30 days, the debt collector will assume the debt is valid;
> (4) a statement that if the consumer notifies the collector that the consumer is disputing the debt in writing within the 30 day period, "the debt collector will obtain verification of the debt [from the creditor] . . . and a copy of [the] verification . . . will be mailed to the consumer"; and
> (5) "a statement that, upon the consumer's written request," the debt collector will give the consumer "the name and address of the original creditor, if different from the current creditor."

*Id.* (quoting 15 U.S.C. § 1692g(a)).

"The notice must also be set forth in a form and within a context that does not distort or obfuscate its meaning. A debt collector may violate Section 1692g if other language in its communication with consumers overshadows or is inconsistent with the statutorily-mandated notice." *Id.* (quotation marks and citations omitted).

Courts "evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard," assuming that the plaintiff "is neither shrewd nor experienced

in dealing with creditors." *Id.* at 669 (quotation marks and citations omitted). The bar for the unsophisticated consumer is not the "very last rung on the . . . sophistication ladder." *Goswami v. Am. Collections Enter., Inc*., 377 F.3d 488, 495 (5th Cir. 2004) (quotation marks and citation omitted). "The unsophisticated consumer isn't a dimwit. She may be uninformed, naïve, and trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc*., 556 F.3d 643, 645 (7th Cir. 2009) (quotation marks, citations, and brackets omitted). "She is not illiterate and can be expected to read the entire collection letter with some care." *Osborn v. Ekpsz, LLC.*, 821 F. Supp. 2d 859, 867 (S.D. Tex. 2011) (citation omitted).

The unsophisticated or least sophisticated consumer standard is supposed to protect consumers "from deceptive debt collection practices and protect[] debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *McMurray*, 687 F.3d at 669 (quotation marks and citation omitted).

### A.   ARS' Motion for Summary Judgment

ARS first argues that it mailed its own debt collection letter to McWilliams, with a correct validation notice, *before* YWW sent the August 27 letter. As a result, it says it is not liable for YWW's letter. Alternatively, ARS argues that it is not vicariously liable for YWW's errors because YWW was an independent contractor under Mississippi law.

McWilliams has submitted a declaration explaining how she handles creditors' letters. She flatly denies receiving a letter from ARS regarding the $1,640 debt to St. Dominic's. Her declaration is bolstered by ARS' own lack of evidence that it ever mailed her a debt collection letter. ARS has submitted a February 2011 letter it sent to another debtor and argues through

counsel that it sent McWilliams the same text. But that is not *evidence* that a letter was ever sent to McWilliams.

At the same time, there *is* evidence that McWilliams had previously sent payments to ARS. She says they were for a prior, "separate" debt, but her declaration is vague as to whether that debt could be the $526.80 owed to Physicians Anesthesia. ARS' supporting affidavit confirms the payments but also does not explain whether they were related to the debts at issue in this suit.

At summary judgment the Court is bound by the evidence in the record, not the evidence which could have been in the record. ARS has submitted no evidence that it ever mailed McWilliams a letter, much less a letter for either of the debts in this lawsuit. McWilliams, meanwhile, has submitted evidence denying receiving a letter from ARS regarding the St. Dominic's debt, and not addressing whether she received a letter for the Physicians Anesthesia debt.

Because there is no evidence that ARS ever sent McWilliams a debt collection letter, its motion for summary judgment on this basis must be denied.

As to the second issue, the Fifth Circuit has not yet weighed in on vicarious liability under the FDCPA. As it stands today, however, more courts than not "support[] the notion that an entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000); *see also Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994); *Cox v. Hilco Receivables, L.L.C.*, 726 F. Supp. 2d 659, 668 (N.D. Tex. 2010) ("The Court agrees with the reasoning of the Third Circuit in *Pollice,* and joins the other courts that have adopted it."); *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 876

(N.D. Ill. 2006) (collecting cases).[1] "Thus, vicarious liability under the FDCPA will be imposed for an attorney's violations of the FDCPA if both the attorney and the client are debt collectors as defined in § 1692a(6)." *Pollice*, 225 F.3d at 404.

ARS presses that it cannot be liable for YWW's mistake because YWW was an independent contractor. Its argument relies heavily upon *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246 (S.D.N.Y. 2011). The *Bodur* court held that a debt collector could be vicariously liable for its attorney's mistakes *if and only if* the debt collector exercised control over its attorney's conduct or activities. *Id.* at 258-59.

With respect, it is not clear that *Bodur* is a correct statement of the law. Others have explained why:

> We do not agree with a requirement that an FDCPA plaintiff show control because claims that a principal is liable for an agent's actions normally do not require such allegations. Rather, traditional vicarious liability rules ordinarily make principals liable for acts of their agents merely when the agents act in the scope of their authority. . . . Moreover, the nature of an attorney-client relationship itself reflects that the client has the power to control its agent in material respects if the client wishes to do so.

*Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 517 (S.D.N.Y. 2013) (quotation marks and citations omitted); *accord Marucci v. Cawley & Bergmann, LLP*, 66 F. Supp. 3d 559, 564 (D.N.J. 2014).

YWW acted within the scope of its authority when it mailed debt collection correspondence to McWilliams. And even if a 'control' test were applied, there would be a dispute of material fact on whether ARS *did* control YWW: recall the email correspondence

---

[1] Courts continue to disagree on whether *non*-debt collectors are vicariously liable for their agent's FDCPA violations. *Compare Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1089-90 (E.D. Cal. 2013) *and Schutz*, 465 F. Supp. 2d at 876 (answering in the affirmative), *with Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) (answering in the negative).

indicating, among other things, that ARS directed YWW to "SHUT DOWN" the file upon learning that St. Dominic's waived McWilliams' debt.

Still, ARS urges this Court to apply Mississippi law regarding independent contractors. It is true that the intersection of state law with federal consumer protection laws has not always been clear. *See Conner v. Howe*, 344 F. Supp. 2d 1164, 1170 (S.D. Ind. 2004) ("the principles of Indiana tort law are not applicable in the context of an FDCPA claim"); *Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1486 (M.D. Ala. 1987) ("This understanding of § 1692a(6)(F) is also consistent with Alabama's general rule that 'omissions and commissions of an attorney at law are to be regarded as acts of the client whom he represents.'"); *see also Skinner v. Bluestem Brands, Inc.*, No. 3:14-CV-256-CWR-FKB, 2015 WL 4135269, at *4 n.1 (S.D. Miss. July 8, 2015).

Any conflict is moot in this case, though, since both traditional principles of agency law and Mississippi's agency law support holding ARS liable for its law firm's errors. *See Okyere*, 961 F. Supp. 2d at 517; *Stringer v. State*, 627 So. 2d 326, 330 (Miss. 1993) ("a party is bound by the acts of his attorney"); *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1180 (Miss. 1990) ("Under the law of agency, a principal is bound by the actions of its agent within the scope of that agent's real or apparent authority."); *Parmley v. 84 Lumber Co.*, 911 So. 2d 569, 573 (Miss. App. 2005) (concluding that attorney acted with apparent authority in settling case for client and reaffirming principle that "[a]n attorney is presumed to have the authority to speak for and bind his client").

As a final matter, in arguing that it is not liable for YWW's errors, ARS cites an Arkansas bankruptcy decision in which a client was relieved of liability for its attorney's mistakes because the attorney had committed fraud. ARS then suggests that YWW committed

9

fraud when it filed suit against McWilliams after ARS told it to "SHUT DOWN" her file. The argument cannot be considered because there is no fraud cross-claim pending against YWW.[2]

ARS' motion for summary judgment is denied.

### B.      YWW's Motion for Partial Summary Judgment

YWW seeks summary judgment on Count I of McWilliams' complaint. It argues that because ARS had already sent McWilliams a proper validation notice, its own August 27 letter was "gratuitous" and "did not need to comply with the FDCPA."

As before, the motion must be denied because there is no evidence that ARS ever sent a letter to McWilliams. It is therefore unnecessary to wade into the parties' disagreement on whether the FDCPA requires a subsequent debt collector's initial communication to contain a new, accurate validation notice.

YWW's motion is denied.

### C.      McWilliams' Motion for Partial Summary Judgment

Finally, McWilliams seeks summary judgment on Count I against both ARS and YWW. She contends that the August 27 letter violated the FDCPA by: (1) failing to state that an undisputed debt would be presumed valid *only* by the debt collector, and by (2) failing to specify that McWilliams had to respond *in writing* to compel YWW to send her further information. The first would violate § 1692(g)(a)(3), she says, while the second would violate §§ 1692(g)(a)(4) and 1692(g)(a)(5). McWilliams has submitted a litany of authorities finding validation notices like YWW's to violate the FDCPA. *E.g.*, *Orr v. Westport Recovery Corp.*, 941 F. Supp. 2d 1377, 1382 (N.D. Ga. 2013); *Osborn*, 821 F. Supp. 2d at 869.

---

[2] Relatedly, ARS argues that it should not be held liable because YWW committed "malpractice." The Court notes that YWW and ARS are represented by the same law firm. If the defendants' interests are diverging, they should consider retaining separate counsel.

In response, the defendants simply restate and reincorporate the arguments discussed above. They do not contest the cases establishing the substantive violations of the FDCPA.

Again, because there is no evidence that ARS sent McWilliams a letter or validation notice for these debts, YWW's August 27 letter was required to contain a validation notice, and that validation notice had to comply with the FDCPA. It did not. It follows that McWilliams is entitled to partial summary judgment on Count I of her complaint against both defendants.

**IV.  Conclusion**

ARS' motion is denied, YWW's motion is denied, and McWilliams' motion is granted.

**SO ORDERED**, this the 31st day of March, 2016.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE