## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**WENDY MCWILLIAMS,** *individually and*            **PLAINTIFF**
*on behalf of others similarly situated*

**V.**            **CAUSE NO. 3:15-CV-70-CWR-LRA**

**ADVANCED RECOVERY SYSTEMS,**            **DEFENDANTS**
**INC.; YOUNG WELLS WILLIAMS, P.A.**

## ORDER

Before the Court is the plaintiff's motion for attorney's fees and costs. The matter is fully briefed and ready for adjudication.

### I. Factual and Procedural History

Wendy McWilliams commenced this suit in 2015. She alleged that Advanced Recovery Systems and the Young Wells Williams law firm violated the Fair Debt Collection Practices Act (FDCPA) when they attempted to collect a medical debt from her. *See* 15 U.S.C. §§ 1692 *et seq*.

The parties' dispute ripened into substantial motions to dismiss and motions for summary judgment. *See McWilliams v. Advanced Recovery Sys., Inc.*, 108 F. Supp. 3d 456 (S.D. Miss. 2015); *McWilliams v. Advanced Recovery Sys., Inc.*, 174 F. Supp. 3d 936 (S.D. Miss. 2016). Two classes were eventually certified. *See McWilliams v. Advanced Recovery Sys., Inc.*, 310 F.R.D. 337 (S.D. Miss. 2015). And, in an unforeseeable twist, it became necessary for the parties to stop other plaintiff's attorneys from raiding the certified classes. *See McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635 (S.D. Miss. 2016).

The plaintiff had one count dismissed in 2015, but largely prevailed in 2016 on the counts remaining at the summary judgment stage. The parties thereafter agreed to settle their

differences. In 2017, the Court conducted a fairness hearing and concluded that the proposed class settlement was fair and reasonable. This motion is all that remains before the case is closed.

There is no dispute that the plaintiff is the prevailing party under the FDCPA. Her attorneys are entitled to reimbursement of their reasonable fees and costs. (They were not, for example, paid from the class members' settlement funds.) The question is whether all of their time and costs are appropriately reimbursable.

The plaintiff seeks $115,000 in attorney's fees and $2,053.45 in recoverable costs. She presents evidence that her attorneys—four worked on the case, to varying degrees—typically receive reasonable fee awards of $350 and $400 an hour in other districts throughout the country, including other districts within this circuit.[1] She also has thoroughly documented the hour-by-hour effort spent litigating her case: the time ranged from 7.6 hours for a senior associate to 260.7 hours for the lead attorney.[2] That time, at those rates, would lead to a $131,940 award. The attorneys, however, say they utilized billing judgment to voluntarily reduce the fees they seek to $115,000 and the reimbursable costs to $2,053.45.

The defendants object. They say this was a routine FDCPA case worthy of only $300 an hour for lead counsel, and take issue with much of the time expended on the case. Their most significant objection is to paying for time spent fending off the poaching attorneys, since those fees were supposed to be recouped from the poachers themselves, and not from the defendants. The defendants also object to what they claim is paralegal work, duplicative work, and work on the plaintiff's unsuccessful cause of action.

---

[1] A fifth attorney served as local counsel. The evidence suggests that she is compensated in a different manner.
[2] Included in this total is lead counsel's estimate that the case would require another 30 hours of work from him after filing this motion.

## II. Applicable Law

"As always, the Court uses the lodestar method to calculate an award of fees." *Lighthouse Rescue Mission, Inc. v. City of Hattiesburg, Miss.*, No. 2:12-CV-184-KS-MTP, 2014 WL 4402229, at *3 (S.D. Miss. Sept. 5, 2014) (citation omitted). The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly billing rate. *Id.*; *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "[T]he lodestar method yields a fee that is presumptively sufficient." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673 (2010) (citations omitted).

The Court may then adjust the lodestar to account for factors that bear on the propriety of a fee award—the so-called *Johnson* factors. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 & n.6 (5th Cir. 1993) (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714 (5th Cir. 1974)). The "most critical" factor is "the degree of success obtained." *Abner v. Kan. City S. Ry. Co.*, 541 F.3d 372, 377 (5th Cir. 2008).

"The party seeking reimbursement of attorneys' fees has the burden of establishing the number of attorney hours expended, and can meet that burden only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (quotation marks, citation, brackets, and ellipses omitted). The amount sought and the hours expended must be reasonable. *Id.* at 325. "[T]he burden is on the applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quotation marks and citation omitted). "The court should exclude

all time that is excessive, duplicative, or inadequately documented." *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010).

An attorney's fee award ruling should "explain how each of the *Johnson* factors affects its award" but "need not be meticulously detailed to survive appellate review." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008); *see Blanchard v. Bergeron*, 893 F.2d 87, 89 (5th Cir. 1990) ("we will not require the trial court's findings to be so excruciatingly explicit in this area of minutiae that decisions on fee awards consume more judicial paper than did the cases from which they arose"). As the Supreme Court has explained, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

## III. Discussion

Despite the Supreme Court's admonition, the parties' detailed briefing makes a meticulous, green-eyeshade review unavoidable. We begin with the proposed hourly rates.

### A. Hourly Rates

Reimbursable hourly rates in this district vary widely. *See Brown v. Miss. Dep't of Health*, No. 3:11-CV-146-CWR-FKB, 2013 WL 12128785, at *3 (S.D. Miss. Mar. 5, 2013) (collecting cases). Judges here weigh most heavily the attorney's skill and the evidence presented in support of the requested rate. *Id.*

The plaintiff has introduced a March 2016 affidavit from defense attorney Hugh Keating, a former President of the Mississippi Bar, attesting to the fact that customary and reasonable rates charged for complex litigation in Mississippi are $500 to $550 an hour. Out-of-state lawyers who are engaged in Mississippi litigation charge more than that, Keating says. Plaintiff's

4

counsel then points to several opinions in this district awarding $400 an hour and beyond for an experienced attorney handling complex litigation. *See Jones v. Singing River Health Sys.*, No. 1:14-CV-447-LG-RHW, 2016 WL 3248449, at *3 (S.D. Miss. June 10, 2016) (collecting cases).

The defendants' own evidence confirms that $400 an hour is reasonable for experienced litigators in Mississippi, so their argument focuses on whether this case is complex enough to warrant that sum. And they have a point: this matter certainly did not require the 7,785 attorney hours billed in *Jones* or the years of unforgiving public scrutiny (part and parcel of high-stakes public pension litigation) that might have justified a $500+ hourly rate. But nor was this case akin to their preferred authorities: a default judgment which garnered only a $300 an hour rate.

This was not a typical FDCPA class action. Subjective as that finding may be, it is unlikely that a "simple" case—much less a "simple" class action—would result in four reported decisions. It is even more atypical for class counsel to devote significant time to fending off competing attorneys who try to poach the class representative (of all people).

More important, frankly, is the skill with which plaintiff's counsel litigated this matter. On that point there is no disagreement. Defense counsel concedes that her opponent—a specialist in the field who has been class counsel in dozens of these matters across the country—"is to be commended for his work" for the class, "was professional at all times and was successful in two out of three counts," and used his "excellent negotiation skills" to achieve a settlement fund *greater* than that required by the law.[3]

The undersigned concurs and adds two points. First, counsel also achieved a change in business practices that should avoid future FDCPA violations (and future litigation costs) by the

---

[3] Counsel's level of experience in handling cases brought under the FDCPA, other consumer protection statutes, and class actions generally cannot be overstated. The firm's experience is impressive, *see* Docket No. 85-1, and the hourly rate claimed is easily justified.

5

defendants. And second, not one objection was raised to the notice of proposed settlement class members received, despite full disclosure of the fees and costs counsel would seek. "The absence of any objection" to this fee "further supports the award." *Cook v. Howard Indus., Inc.*, No. 2:11-CV-199-KS-MTP, 2013 WL 943664, at *4 (S.D. Miss. Mar. 11, 2013) (citations omitted).

In other fee-shifting cases litigated in this district by other attorneys, a $400 hourly rate may not be achievable. But it is for the work done on this case, by this firm, with these results. The Court approves a $400 hourly rate for Michael L. Greenwald, Aaron D. Radbil, and James L. Davidson, as well as a $350 hourly rate for Jesse S. Johnson.

**B. Hours Expended**

Class counsel have submitted detailed time entries and descriptions for all of their work in this dispute. Lead counsel Greenwald says he worked 260.7 hours, Radbil worked 10.2 hours, Davidson worked 17.8 hours, and Johnson worked 63.2 hours on this case.

Before filing this motion, Greenwald reviewed the time sheets and made 129 of his colleagues' entries non-billable. Many of these entries were for case strategy conversations with co-counsel; others were for reviewing drafts, correspondence, and orders. The result is that the motion seeks reimbursement of 260.7 hours for Greenwald, 7.6 hours for Radbil, 13.6 hours for Davidson, and 54.8 hours for Johnson. This represents a $131,940 attorney's fee.

The plaintiff's attorneys also recovered $1,000 from the third-party poachers. That brings their unreimbursed total to $130,940.

The plaintiffs have attempted to streamline this process by discounting their fees by another $16,000, for a total request of $115,000. It is an understandable strategy to try and move a case over the finish line. The most precise way for a court to analyze the objections, though, is

6

to take the unreimbursed total of $130,940 as a starting point and proceed to discuss each of the defendants' specific arguments.

The defendants' most compelling argument is that they should not be held accountable for attorney's fees incurred as a result of the poaching attorneys. The undersigned agrees. In an earlier Order, counsel for plaintiff and defendants were directed to seek their raid-related attorney's fees from the responsible attorneys. Plaintiff's counsel negotiated a $1,000 sum from the poachers and seeks the balance today. But because the defendants are not responsible for the wrongful acts of the third parties, shifting these fees to the defendants is inappropriate, and the Court has deleted the raid-related work. Greenwald's hours will be reduced by 23.1, Radbil's hours reduced by 1.6, Davidson's hours reduced by 1.5, and Johnson's hours reduced by 3.8.

The defendants next contend that their opponents spent too much time on strategy discussions and reviewing pleadings. The argument fails to take into account the 129 times Greenwald exercised billing judgment on those very tasks. Greenwald's decisions were appropriate. No further reductions for duplicative efforts are justified.[4]

The defendants complain that two hours' worth of tasks should have been billed at a paralegal's rate of $125 an hour. The Court agrees as to 0.9 hours of Greenwald's time on service of process and his *pro hac vice* application. Those hours will be reclassified. *See Hardy v. City of Tupelo, Miss.*, No. 1:08-CV-28-SA-JAD, 2010 WL 730314, at *7 (N.D. Miss. Feb. 25, 2010).

---

[4] Surrendering the firm's right to compensation for many of these hours is gratuitous. The Court would be hard-pressed not to find that many of these billings are appropriate. There is nothing nefarious about lawyers in a firm or co-counsel strategizing about a case, discussing how the litigation will be handled, or reviewing each other's work before it is sent to counsel opposite or the Court. In many ways, the litigation is enhanced when a lawyer's work is subjected to review by a colleague or co-counsel.

Next is the defendants' objection to Greenwald billing 16 hours of travel time at his full $400 rate. They maintain that half-time is appropriate for travel. The undersigned again agrees. Greenwald's total will be reduced by 8 hours.

Moving on, the defendants argue that the plaintiff should not recover $3,690 worth of time spent on her overshadowing claim at "summary judgment." It is true that the plaintiff did not succeed on that theory, but the setback actually came at the motion to dismiss stage, before much time had been billed on it. And the law in this situation is not favorable to the defendants:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 435 (citation omitted); *see also Abner*, 541 F.3d at 382 ("the question of whether a party 'prevailed' and whether a fee award is 'reasonable' is not one to parse too thinly—whether by individual claim or the number of trials required to reach a result"). Given these authorities and the plaintiff's overall success, the relatively few overshadowing hours will be included in the award.

Lastly, the Court observes that the plaintiff billed 0.3 hours to review the claims of a second potential plaintiff. Since no second plaintiff materialized that time entry will not be recoverable.

After considering all of the time spent on this case, including the time written-off by lead counsel and the time which should have been billed to the poaching attorneys, this matter was litigated efficiently and effectively. The resulting per-person lodestar is $91,360 for Greenwald (228.4 hours at $400), $2,400 for Radbil (six hours at $400), $4,840 for Davidson (12.1 hours at

$400), $17,850 for Johnson (51 hours at $350), and $112.50 for paralegal tasks. The total lodestar is $116,562.50.

### C. The *Johnson* Factors

The final step requires the Court to discuss each of the *Johnson* factors and adjust the lodestar upward or downward based on that discussion.

> The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07-CV-568-HSO-RHW, 2011 WL 6699447, at *3 (S.D. Miss. Dec. 21, 2011) (citation omitted). Again, the "most critical" of the *Johnson* factors corresponds to (8), "the degree of success obtained." *Abner*, 541 F.3d at 377.

"The United States Supreme Court has stated that many of the *Johnson* 'factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Penthouse Owners*, 2011 WL 6699447, at *4 (quoting *Hensley*, 461 U.S. at 434 n.9).

This case is no different. The above discussion reveals that factors (1), (2), (3), (5), (8), (9), and (12) are already subsumed into the lodestar. None of them warrant an upward or downward adjustment. Factors (4), (6), (10), and (11) are irrelevant to this case or have no bearing on the fee award. Factor (7), time limitations, is applicable to the extent that counsel had to move quickly to stop the poaching attorneys from raiding the class. No upward adjustment to the lodestar is necessary.

9

All said, the Court concludes that the lodestar should not be adjusted based on any of the *Johnson* factors.

**D.     Costs**

Recall that the plaintiff seeks to recover $2,052.55 in costs. That sum appears to be comprised of the $400 filing fee, the $100 *pro hac vice* admission fee, a $150 expense for service of process, a $150 fee to local counsel to review the complaint, and $1,252.55 in travel expenses for necessary court hearings. The defendants object to paying the *pro hac vice* fee and to the service of process expense.

The *pro hac vice* admission fee is not reimbursable. *See Knauff v. Dorel Juvenile Grp., Inc.*, No. SA-08-CV-336-XR, 2010 WL 2545424, at *2 (W.D. Tex. June 21, 2010) (disallowing *pro hac vice* costs); *Smith v. Fresh Cut Floral & Catering, Inc.*, No. 3:07-CV-661-WHB-LRA, 2008 WL 4539630, at *2 (S.D. Miss. Oct. 7, 2008) (same). Service of process, however, is reimbursable at the U.S. Marshal's rate of $65 per defendant, or $130 in this case. *See Ill. Cent. R. Co. v. Harried*, No. 5:06-CV-160-DCB-JMR, 2011 WL 283925, at *2 (S.D. Miss. Jan. 25, 2011). Finally, the undersigned considers local counsel's review fee to be unrecoverable.

The resulting cost award is $1,782.55.

**IV.    Conclusion**

The motion for attorney's fees is granted in part and denied in part. A reasonable award in this case is $116,562.50 in attorney's fees and $1,782.55 in costs.

**SO ORDERED**, this the 16th day of June, 2017.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
